IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LOOMIS INTERNATIONAL, INC. | § § § | |
| Plaintiff, | § § | |
| v. | § § | C.A. NO. _____ |
| ROYCE GENE BINNION, JR., | § § § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

**TO THIS HONORABLE COURT:**

Plaintiff Loomis International, Inc. ("Loomis") files this Original Petition against Defendant Royce Gene Binnion, Jr.

### I.
### THE PARTIES

1. Loomis is a corporation organized under the laws of Texas with its principal place of business in Pasadena, Harris County, Texas. Loomis' home office address is 100 North Richey, Pasadena, Texas 77506-1055.

2. Mr. Binnion is an individual residing in the State of Texas. Mr. Binnion may be served at his home located at 22860 Tigris Drive, Porter, Texas 77365, or wherever he may be found. This lawsuit arises out of Mr. Binnion's business in Texas as a former employee of Loomis.

### II.
### JURISDICTION & VENUE

3. This Court has jurisdiction pursuant 28 U.S.C. §1331 due to the alleged violations of the Computer Fraud and Abuse Act. 18 U.S.C. §1030.

4. This Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District of Texas under 28 U.S.C. §1391(a)(2), as this is the district where a substantial part of the events giving rise to this Complaint occurred.

### III.
### INTRODUCTION

6. Loomis sues former employee Royce Gene Binnion, Jr. ("Binnion") for intentionally plotting to destroy Loomis' business, and for tortiously interfering with Loomis' contracts for the performance of testing and torque services by diverting those contracts to competitors. Binnion was employed by Loomis as Director of Field Sales from July 2012 until December 21, 2012. Loomis terminated Binnion's employment after discovering that Binnion had an extramarital affair with the wife of Loomis' President and CEO, Mr. Larry C. Johnson.

7. Binnion went to work for a consulting company and is in charge of authorizing work projects for services companies, like Loomis. He immediately began a campaign to direct work away from Loomis to other competitors.

### IV.
### FACTUAL BACKGROUND

8. Loomis is successfully engaged in the business of hydrostatic and gas testing of tubing and casing with operations in Texas, Louisiana, and elsewhere.

9. Larry C. Johnson is and has, at all relevant times, been the President and Chief Executive Officer ("CEO") of Loomis.

10. In July, 2012, Binnion became employed by Loomis as the Director of Field Sales Manager.

2

11. Binnion was responsible for the marketing and sales of hydrostatic testing, torque turn, pick up and lay down and external testing to corporate entities through Loomis' outside salespersons.

12. Binnion managed and supervised several outside salespersons during his employment with Loomis.

13. Binnion was unable to maintain Loomis' projected sales numbers in the Fall of 2012.

14. Binnion was counseled on several occasions about his poor job performance.

15. Binnion seemed to lose interest in his position and, based on information and belief, began interviewing for other job positions in November 2012.

16. While employed with Loomis, Binnion interviewed for job positions that related to and competitive with the services Loomis provided to its customers, based on information and belief.

17. Binnion intended to quit Loomis at the beginning of 2013.

18. However, prior to Mr. Binnion's resignation, Loomis' owner and CEO learned that Binnion was engaged in a consensual romantic relationship with the CEO's wife.

19. Loomis terminated Binnion's employment on December 21, 2012.

**A.**     **Binnion's Unauthorized Deletion of Information from his Loomis Smart Phone**

20. Immediately after Binnion was terminated, he purposefully wiped his Loomis-owned smart phone, restoring it to factory settings and destroying all contents therein, including Loomis-owned data and information.

21. During his employment, Binnion was provided with a smart phone by Loomis. The smart phone provided Binnion with access to all Loomis contacts and other proprietary business information.

22. The Loomis smart phone allowed Binnion to save Loomis related texts, messages and emails that were not accessible by the Loomis corporate office or stored in other locations.

23. Loomis was forced to retain a forensic expert to attempt to recover the purposefully deleted information.

24. The information scrubbed by Binnion from his smart phone included contacts, text messages, business correspondence and other information that could not be recovered.

25. Binnion was not authorized to destroy information off his smart phone.

B. **Binnion Intentionally Stripped Loomis of an Assigned Project**

26. Soon after being terminated, Binnion began working for LOR Consulting.

27. LOR Consulting is a project management provider for oil and gas companies. The company works directly with drilling and production managers and rig managers, providing project management services functioning as a liaison between the operator and vendors like Loomis.

28. EOG Resources, Inc. ("EOG") is an operator and also has been a Loomis customer for years. Loomis has performed external testing and torque turn services for EOG operations for many years.

29. During Binnion's employment, Loomis sold these types of services to EOG, specifically including external testing and torque turn.

30. Immediately after he was terminated by Loomis, Binnion performed services for EOG, on behalf of LOR Consulting,

31. In February 2012, Binnion redirected work which EOG had already awarded to Loomis to a competitor, advising EOG not to use Loomis' services.

4

32. Loomis contacted EOG about Binnion's diversion of the EOG February 2012 project. EOG was able to restore part of the February 2012 project to Loomis, but a large segment services was lost and has never been recovered.

C. **Binnion's Violation of his Employment Agreement**

33. On July 25, 2012, Binnion signed an employment agreement ("Loomis Employment Agreement") containing certain confidentiality provisions and post-employment obligations to refrain from directly or indirectly engaging in the same or competitive business as Loomis and from participating in any capacity in servicing Loomis' customers.

34. The Loomis Employment Agreement provides, among other things, that Binnion "will not publish, disclose to anyone outside [Loomis], or use in other than [Loomis'] business, any trade secrets or confidential, technical or business information or material of [Loomis], or interfere with the employee relations of [Loomis], either during or after [the employee's] employment by [Loomis]." *See* the Loomis Employment Agreement at ¶ 3.

35. Additionally, the Loomis Employment Agreement contains a non-compete provision:

> In order to protect [Loomis] against disclosure of [its] trade secrets and confidential information and against unfair loss of customers' goodwill, I agree that for a period of twenty-four (24) months following the date of termination of my employment with [Loomis] I [shall not engage directly or indirectly,] in the same or a [competitive business or in a similar field of activity], for myself or for others[, as an employee or in any other capacity] in the Gulf Coast region.

*Id.* at ¶ 4.

36. The Loomis Employment Agreement also restricts Binnion from engaging in a similar business as Loomis and from providing services to or soliciting clients and employees for 24 months from the date of his departure and states in pertinent part:

> [F]or a period of twenty-four (24) months after my last day of employment with [Loomis], or twenty-four (24) months from the date of any court order enforcing

5

all or part of this . . . provision, whichever is later, I will not directly or indirectly accept or participate in any capacity in providing services to or soliciting Loomis Business from any person or firm who was a customer of [Loomis] with whom I worked or whose name became known to me while employed at [Loomis], or who was a prospective customer of [Loomis] of whom I had knowledge during my employment with [Loomis] within the Gulf Coast Region.

*Id.* at ¶¶ 5-6.

37. The purpose of the non-competition, non-solicitation, non-disclosure, and confidentiality provisions contained in the Loomis Employment Agreement is to protect the disclosure of the confidential, proprietary, and trade secret information that is provided to employees as well as to protect the time, effort, and funds that have been utilized in training employees and building Loomis into a successful and profitable business.

38. Binnion began consulting for EOG, one of his Loomis clients, immediately after he was terminated from Loomis, in violation of his contract.

## V.
## CAUSES OF ACTION

**A.**     **Breach of Contract**

39. The Loomis Employment Agreement imposed on Binnion various duties, including a non-disclosure and confidentiality covenant and also forbid Binnion from removing or destroying any confidential information from Loomis.

40. Binnion has serviced, and based on information and belief, continues to service Loomis clients in violation of his contractual obligations.

41. Binnion's employment contract with Loomis contains non-competition, non-disclosure, non-solicitation and confidentiality covenants which forbid him from servicing Loomis clients, directly or indirectly soliciting current and former Loomis employees and disclosing Loomis' confidential, proprietary and trade secret information.

42. Binnion has breached valid provisions of his Loomis Employment Agreement by working for LOR Consulting and servicing Loomis clients and by deleting and misusing confidential and proprietary information of Loomis. Loomis, on the other hand, performed its obligations under the employment contract.

43. As a direct and proximate cause of Binnion's breach, Loomis has suffered and continues to suffer damages and depletion of its goodwill and good standing in the business community.

**B.     Tortious Interference with Existing Contract**

44. Binnion tortiously interfered with the valid relationship between Loomis and its customers. Binnion willfully, intentionally, fraudulently and maliciously interfered with Loomis' existing contracts without privilege or justification. He undertook these actions for his own personal gain and benefit and to Loomis' detriment. Binnion willfully and intentionally encouraged customers to divert projects from Loomis to its competitors.

45. As a direct and proximate cause of Binnion's tortious interference, Loomis has suffered actual damages. Because Binnion's conduct was committed maliciously and/or fraudulently, Loomis is also entitled to recover exemplary damages. Loomis' damages exceed the jurisdictional limits of this Court.

**C.     Tortious Interference with Prospective Contract**

46. Binnion willfully, intentionally, fraudulently and maliciously interfered with Loomis' ongoing relationships, without privilege or justification and by committing independently tortious conduct, which proximately caused damages to Loomis.

47. Binnion disparaged Loomis' employees, executives, products and services and has interfered, and will continue to interfere, with its potential business relationships.

48. As a direct and proximate result of Binnion's tortious interference, Loomis has suffered actual damages. Because Binnion's conduct was committed maliciously and/or fraudulently, Loomis is also entitled to recover exemplary damages as allowed by Chapter 41 of the Texas Civil Practice and Remedies Code. Loomis' damages exceed the jurisdictional limits of this Court.

### D. Defamation

49. Binnion has made numerous slanderous comments to third parties. These statements of fact slandered Loomis and President Larry C. Johnson as a businessman and as a person. These statements also slandered Loomis. The statements were false and defamatory.

50. Binnion made the comments out of malice, spite, or negligence.

51. As a direct and proximate result, Loomis has suffered both actual and presumed injury.

### E. Computer Fraud and Abuse Act

52. Loomis stores confidential and proprietary information in its database, which was available by Binnion. Loomis provided Binnion with a smart phone for use in his daily Loomis duties.

53. Binnion was not authorized to delete or destroy information on the smart phone.

54. Notwithstanding, within hours of his termination, Binnion purposefully wiped his Loomis cell phone and destroyed and deleted all information, data and metadata contained therein.

55. Binnion greatly exceeded his authorized access to the Loomis smart phone, with intent to defraud the company.

56. Loomis' smart phone provided to Binnion was used in interstate commerce or communications.

57. Loomis was damaged and continues to suffer damage by the loss of unknown and proprietary information. Loomis retained a forensic expert to recover the deleted information, to no avail. Loomis' damages exceed Five Thousand Dollars ($5,000). As a result, Loomis has sustained damages in an amount to be proven at trial.

58. Under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030 et seq, it is unlawful for any person to intentionally access a computer in excess of authorized access.

59. Loomis' smart phone and associated database are "protected computers" within the meaning of the CFAA.

60. Binnion knew or reasonably should have known that he was not authorized to delete or scrub information from his Loomis smart phone.

61. Based on information and belief, the Loomis smart phone was scrubbed out of spite, because his relationship with Ms. Johnson ended.

62. Binnion' conduct was intentional, willful and wanton, thereby entitling Loomis to punitive damages.

63. Loomis is likewise entitled to damages and injunctive relief.

### F. Permanent and Injunctive Relief

64. Loomis repeats and realleges each and every allegation contained in the foregoing paragraphs.

65. Loomis is entitled to immediate injunctive relief, including a preliminary injunction, and a permanent injunction for Binnion's improper conduct.

66. Based on Binnion's breach of his contractual and fiduciary obligations, deletion, acquisition, and other misappropriation of Loomis' confidential proprietary information and other unfair competition against Loomis, including improper servicing of Loomis' clients and

tortious interference of contracts and business relationships, Loomis can demonstrate a probable right to recovery under each cause of action that it has pled.

67. Binnion's improper actions will likely continue unless this Court restrains him; therefore, Loomis is subject to imminent harm. This harm will cause an irreparable injury to Loomis' client base, income stream, reputation, and goodwill that cannot adequately be compensated through any legal remedy.

68. Accordingly, this Court, after hearing, should issue a preliminary injunction, and after trial, a permanent injunction, enjoining Binnion as follows:

   a. Binnion shall not use, disclose, or acquire Loomis' confidential proprietary confidential information and trade secrets;

   b. Binnion shall not directly or indirectly accept or participate in any capacity in providing services to or soliciting Loomis business from any person or firm who was a customer of Loomis with whom Binnion worked or whose name became known to Binnion while employed at Loomis, or who was a prospective customer of Loomis of whom Binnion had knowledge during his employment with Loomis within the Gulf Coast Region;

   c. Binnion shall not directly or indirectly accept or participate in the same or a competitive business or in a similar field of activity of Loomis, for himself or for others in Texas, Louisiana or Mississippi; and

   d. Binnion shall return to Loomis any and all copies of Loomis' confidential proprietary information and trade secret information.

## VI.
## CONDITIONS PRECEDENT

69. All conditions precedent to Loomis' recovery on the claims stated in this complaint have occurred, been performed, been waived, or been excused.

## VII.
## JURY DEMAND

70. Loomis demands a jury trial and tenders the appropriate fee with this Complaint.

## VIII.
## ATTORNEYS' FEES

71. Pursuant to Sections 38.003 of the Texas Civil Practices and Remedies Code and paragraph 15(e) of the Loomis Employment Agreement, Loomis has retained the undersigned attorneys to represent it in prosecuting this action. Loomis is entitled to, and hereby requests judgment for, its reasonable and necessary attorneys' fees from Binnion incurred in bringing this action and prosecuting any appeal.

## IX.
## PRAYER

WHEREFORE, Plaintiff Loomis International, Inc., requests judgment against Defendant Royce Gene Binnion, Jr. for:

    a.    actual damages;
    b.    lost profits;
    c.    loss of goodwill;
    d.    exemplary damages;
    e.    preliminary and permanent injunction;
    f.    pre- and post-judgment interest at the highest rate allowed by law;
    g.    reasonable attorneys' fees and expenses as allowed by law;
    h.    costs of court; and
    i.    all other relief to which the Plaintiff may be justly entitled.

Respectfully submitted,

/s/ Rachel Powitzky Steely

Rachel Powitzky Steely
Federal I.D. No. 19170
Texas State Bar No. 00792770
rsteely@gardere.com

ATTORNEY-OF-RECORD FOR PLAINTIFF
LOOMIS INTERNATIONAL, INC.

OF COUNSEL:

Laura J. Goodson
Federal I.D. No. 582592
Texas State Bar No. 24045959

lgoodson@gardere.com

GARDERE WYNNE SEWELL, L.L.P.
1000 Louisiana, Suite 3400
Houston, Texas  77002
Telephone:  713-276-5500
Facsimile:    713-276-5555

Gardere01 - 6313770v.1

12